**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SWANSON GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-179C |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO**
**PLAINTIFF'S MOTION TO TRANSFER AND CONSOLIDATE**

Gary G. Stevens
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Alan I. Saltman
Ruth G. Tiger
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: June 3, 2005

# TABLE OF CONTENTS

**PAGE**

Table of Authorities ........................................ ii

Argument ........................................ 1

Conclusion ........................................ 13

## TABLE OF AUTHORITIES

**CASES** **PAGE**

A-1 Cigarette Vending, Inc. v. United States,
40 Fed. Cl. 643 (1998) .....13

Bank of Montreal v. Eagle Associates,
117 F.R.D. 530 (S.D.N.Y. 1987) .....3

Entergy Nuclear Indian Point 2, LLC v. United States,
62 Fed. Cl. 798 (2004) .....12, 13

H.N. Wood Products, Inc. v. United States,
59 Fed. Cl. 479 (2003) .....4, 6, 7, 8

Karuk Tribe of California v. United States,
27 Fed. Cl. 429 (1993) .....3

Oregon Natural Resources Council Action v. United States Forest Service,
59 F. Supp.2d 1085 (W.D. Wash. 1999) .....2, 8

Precision Pine & Timber, Inc. v. United States,
50 Fed. Cl. 35 (2001) ..... *passim*

Scott Timber Co. v. United States,
333 F.3d 1358 (Fed. Cir. 2003) ..... *passim*

Superior Timber Co., Inc.,
IBCA No. 3459, 97-1 BCA ¶ 28,736 (1997) .....4

**STATUTES AND REGULATIONS**

Section 318 of the Department of the Interior and Related Agencies
Appropriations Act of 1990, Pub. L. No. 101-121, 103 Stat. 701 (1989) .....6

National Forest Management Act, 16 U.S.C. § 1600 .....6

National Environmental Policy Act, 42 U.S.C. § 4321 .....6

RCFC 20(a) .....13

RCFC 40.1(a) .....13

RCFC 42.1 .....13

**ARGUMENT**

Defendant opposes plaintiff's motion ostensibly on the ground that the key issue of Forest Service liability is not common to the three consolidated timber sale suspension cases now before Judge Williams[1] and the instant case ("Swanson"), and because "subsequent lawsuits and natural wildfire occurrences took each sale along separate paths." Defendant's Opposition at 3 [hereinafter "Def.Opp."]. These contentions are incorrect, misleading and inconsistent with defendant's previous consent to the transfer and consolidation of Timber Products with Blue Lake[2] and the transfer and consolidation of CLR with Blue Lake and Timber Products before Judge Williams. Moreover, defendant makes numerous broad, conclusory assertions which are not supported by the facts, and defendant has not demonstrated that the transfer of Swanson to Judge Williams and its consolidation with the other timber sale suspension cases consolidated under CoFC No. 01-570C will delay the final resolution of these cases or in any way prejudice defendant's ability to defend against Swanson's allegations.

The primary allegation of each plaintiff in the three cases before Judge Williams and in Swanson is that the Forest Service breached its implied obligations to cooperate and not to hinder plaintiff's performance of its timber sale contract by unreasonably suspending sale operations in order to perform certain wildlife and plant surveys. The Northwest Forest Plan required the Forest Service to perform the surveys before these sales were offered to the public

[1]Blue Lake Forest Products, Inc. v. United States, CoFC No. 01-570C (lead case), Timber Products Co. v. United States, CoFC No. 01-627C, and CLR Timber Holdings, Inc. v. United States, CoFC No. 04-501C. A courtesy copy of this reply is being provided to Judge Williams.

[2]Plaintiff's Unopposed Motion to Transfer and Consolidate filed February 27, 2002 in CoFC No. 01-627C (Timber Products). Plaintiff's Unopposed Motion to Transfer and Consolidate filed May 26, 2004 in CoFC No. 04-501C (CLR).

and awarded to plaintiffs. The Forest Service's decision not to perform these surveys for all four timber sales and numerous other timber sales in Washington, Oregon and northern California was a direct consequence of the Forest Service's unreasonable, arbitrary and capricious interpretation of the Plan's survey requirements and does not turn on any facts unique to each sale.

In the alternative to this principal allegation, plaintiffs in each of the four cases have alleged that even if the Court were to find that the Forest Service had a reasonable basis for its interpretation of the Northwest Forest Plan and decision not to perform the surveys before contract award, the duration of the suspensions was unreasonable.[3] Defendant's Opposition misleadingly conflates this alternative allegation with plaintiffs' principal allegation in an effort to persuade the Court that Swanson and the three cases before Judge Williams involve dissimilar legal issues and disparate material facts and that therefore the issue of Forest Service liability does not turn on a key issue common to all of these cases.

Defendant concedes that the Forest Service suspended all four sales "due to the district court's August 2, 1999 decision in" Oregon Natural Resources Council Action v. United States Forest Service, 59 F. Supp.2d 1085 (W.D. Wash. 1999) (ONRC Action), that all four cases involve allegations that the Forest Service "wrongfully suspended and delayed certain sales on the national forests within the area governed by the Forest Service's Northwest Forest Plan," and that "the injunctions [sic; there was only one injunction] issued as a result of the ONRC litigation

[3]In order to perform the required surveys, the Forest Service suspended Blue Lake's Happy Thin sale and Timber Products' Jack Heli sale for more than 15 months, CLR's Too Wild sale for more than 13 months, and Swanson's Prairie Thin sale for more than 45 months.

served as the catalyst for the suspension of these timber sale contracts." Def.Opp. at 2. Defendant does not dispute, or even discuss, the fact that all four standard timber sale contracts are the same in all material respects (FS Form 2600 or 2600-T) and involve substantively identical key provisions, e.g., C6.01 and CT6.01 [hereinafter collectively "C(T)6.01"]. Nevertheless, defendant summarily dismisses these key common legal and factual elements as merely relating to the "initial suspension" which is "only one of many legal issues present in this [Swanson] case." Def.Opp. at 3.

The important point that defendant ignores is that:

> One of the primary objectives of consolidation is to prevent separate actions from producing conflicting results, which can occur when both cases require judicial determinations of the same facts.

Karuk Tribe of California v. United States, 27 Fed. Cl. 429, 433 (1993) (granting defendant's motion to consolidate over plaintiffs' opposition despite the presence of some different issues of law and fact involving the plaintiffs in both cases; relying on Bank of Montreal v. Eagle Associates, 117 F.R.D. 530, 532-33 (S.D.N.Y. 1987)).

In all four cases proof of plaintiffs' primary allegation on the issue of liability will invoke exactly the same facts, documents and witnesses regarding the Forest Service's controversial interpretation of the Northwest Forest Plan and will not turn on any facts specific to any individual timber sale. Transfer and consolidation of Swanson for adjudication along with Blue Lake, Timber Products and CLR will therefore promote judicial efficiency and ensure consistent application of the law. If this same common issue of liability, involving the same facts, documents and witnesses, were subject to parallel adjudication by two different judges, there

would be a needless duplication of effort, a waste of judicial resources, unnecessary expense for Swanson and the government, and the possibility of conflicting application of the law to identical facts. Defendant's Opposition ignores these factors entirely. On this basis alone, Swanson has demonstrated the appropriateness of transfer and consolidation of this case with Blue Lake, Timber Products, and CLR and the Court should grant Swanson's motion.[4]

In each of the four timber sale suspension cases plaintiffs' legal theory is derived from Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35 (2001); accord Superior Timber Co., Inc., IBCA No. 3459, 97-1 BCA ¶ 28,736 (contractual authority to suspend timber harvesting did not absolve government of liability where its failure to comply with environmental obligations was the cause of a court-ordered injunction of timber harvesting). Defendant does not mention Precision Pine in its opposition or that the Federal Circuit cited Precision Pine with approval in Scott Timber Co. v. United States, 333 F.3d 1358, 1369 (Fed. Cir. 2003). Moreover, it is clear from Precision Pine, Scott Timber and H.N. Wood Products, Inc. v. United States, 59 Fed. Cl. 479, 487 (2003), that the key issue of liability in the four current cases is not simply "whether the USFS had the contractual authority to suspend timber sale contracts when instructed to do so by the district court in the ONRC litigation," as defendant claims. Def.Opp. at 4-5. Rather, the key issue is whether in suspending the sales pursuant to contract clause C(T)6.01 in order to perform surveys which it was plainly obligated to perform

[4]At a minimum, the Court should transfer Swanson to Judge Williams who, after ruling on substantial discovery disputes for over a year, is familiar with many of the key facts and legal issues involved in the timber sale suspension cases presently consolidated before her. Judge Williams can then decide whether judicial economy and the avoidance of conflicting results can best be served by consolidation or separate adjudications managed by her.

prior to award, the Forest Service breached its implied obligations to cooperate and not to hinder plaintiffs' performance. See Precision Pine, 50 Fed. Cl. at 57-65.

If the answer to this threshold liability question is yes, then the limitation on damages contained in contract clause C(T)6.01 does not apply, and the Forest Service would be liable to each plaintiff for the full scope of common law breach of contract damages which that plaintiff may establish, including the cost of replacement timber, lost profits and other incidental and consequential damages. Thus, resolution of this issue may be outcome determinative on the issues of liability and the recoverable elements of damage, and there may be no need to litigate plaintiffs' secondary allegations regarding the unreasonable duration of the suspensions. Defendant repeatedly and disingenuously describes this common liability issue as only "the initial issue of law, and not fact, of whether the Government had the contractual authority to suspend the timber sale contracts in light of the ONRC injunction." Def.Opp. at 5. As the foregoing discussion demonstrates, the issue is not whether the Forest Service had authority to suspend. The issue is whether the suspensions were an unreasonable exercise of that authority, and the issues of fact pertinent to this issue are the same for all four sales.

Additionally, defendant's interpretation of the Federal Circuit's opinion in Scott Timber is incorrect and misleading. First, defendant does not acknowledge that the question before the Federal Circuit in Scott Timber was whether the Court of Federal Claims had properly granted summary judgment to defendant on contracts that contained clause C6.01 on the grounds that the

Forest Service's suspensions were reasonable.[5] The Court of Federal Claims had concluded that the suspensions were not unreasonable as a matter of law because Section 318 of the Department of the Interior and Related Agencies Appropriations Act of 1990, Pub. L. No. 101-121, 103 Stat. 701 (1989), had relieved the Forest Service of the normal statutory requirements of complying with the National Forest Management Act (NFMA), 16 U.S.C. § 1600 et seq., and the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq., before entering into the timber sale contracts at issue in that case. See 333 F.3d at 1369. In this context, the Federal Circuit reversed the grant of summary judgment to the government.

In Scott Timber the court found the evidence presented by the parties regarding the reasonableness of the length of the suspension conflicting and determined that when drawing all inferences in favor of the non-moving party, neither party had demonstrated entitlement to summary judgment. 333 F.3d at 1368-70. The focus of the Scott Timber analysis was on the prolonged length of the suspension. Accordingly, the matter was remanded for trial. In Blue Lake, Timber Products, CLR and Swanson, plaintiffs' primary allegation is that the cause of the suspension was itself a consequence of Forest Service fault. In addition, defendant's assertion that Scott Timber and this Court in H.N. Wood found "that the Government's failure to comply with statutory environmental requirements may qualify as a breach [of a timber sale contract], but only if the Court concluded after consideration of other relevant facts that the Forest Service did not act reasonably in carrying out its obligations" is misleading. Def.Opp. at 3. What the

[5]For contracts at issue in Scott Timber that did not contain clause C6.01, the issue before the court was whether those contracts provided the Forest Service with suspension authority. The court ruled that they did not. 333 F.3d at 1366-68.

Federal Circuit actually stated with regard to the parties' dispute over the reasonableness of the duration of the suspension was:

> While the violation of statutory obligations does not establish a breach of contract unless the statutory obligations are incorporated into the contract at issue, see Smithson v. United States, 847 F.2d 791, 794-95 (Fed. Cir. 1988), these violations may nonetheless serve as a factor in a reasonableness analysis. See, e.g., Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35, 63 (2001) ("the Scott Timber Court's reliance on Smithson is misplaced"). Although violations of statutory obligations not incorporated into the contract cannot constitute, by themselves, a breach of contract, this court finds that the requirements under the ESA can be considered as a factor in the analysis of whether the suspensions were reasonable, which is a question of fact.

333 F.3d at 1369.[6]

H.N. Wood, like the instant cases, involved an allegation that the Forest Service violated its contractual duty to cooperate and not to hinder, notwithstanding the presence of clause CT6.01 in the contract, by suspending a timber sale contract in order to perform environmental analyses which the Forest Service should have performed earlier. Following contract award, the Forest Service suspended the sale after it received two district court decisions stating that the sale could not proceed until the Forest Service

[6]Defendant also misleadingly cites Scott Timber, as holding "that the Forest Service was expressly authorized to suspend operations under timber sale contracts with contract clause C6.01, which provided that the purchaser agrees to interrupt or delay operations under the contract at the request of a contracting officer to comply with a court order issued by a court of competent jurisdiction, [sic] contractor and which limited the purchaser[']s remedies." Def.Opp. at 5. By this defendant appears to imply that the Federal Circuit in Scott Timber has already decided what the defendant characterizes as "[o]ne common legal issue" in all four of the current cases because in Scott Timber the Federal Circuit acknowledged that the Forest Service had authority under clause C6.01 to impose a suspension. This is a distortion of the Scott Timber holding because it omits the court's ruling that a breach of contract may be found despite the authority of the Forest Service to suspend under clause C6.01 if it is determined that the Forest Service unreasonably exercised that authority. 333 F.3d at 1368.

performed certain statutorily required cumulative effects analyses. 59 Fed. Cl. at 481-82. In denying H.N. Wood's motion for summary judgment because there were insufficient undisputed facts, the court adopted the legal standard articulated in Precision Pine and concluded that the Forest Service could be liable for breach of its implied duty to cooperate and not to hinder notwithstanding clause CT6.01. 59 Fed. Cl. at 486-89.

In Swanson, Blue Lake, Timber Products and CLR, the only "other relevant facts" in determining whether the Forest Service unreasonably imposed the suspensions are the facts surrounding the Forest Service's adoption of its controversial interpretation of the Northwest Forest Plan. Discovery in the consolidated cases before Judge Williams has revealed that a small group of agency representatives operating out of the federal Regional Ecosystem Office and other related offices adopted this interpretation and generated guidance for the management of all Forest Service timber sales within the Northwest Forest Plan area. Once adopted, the Forest Service applied this interpretation uniformly to all timber sales within the Plan area, including the three involved in the consolidated cases before Judge Williams and the one in Swanson.

Defendant broadly asserts, without any support, that "all actions taken by the USFS subsequent to the ONRC litigation with respect to the sales involved in Blue Lake, Timber Products, CLR and Swanson necessarily differed because they were tailored to each sale and its surrounding circumstances." Def.Opp. at 2. This is another misleading statement. As stated above, the Forest Service's decision to suspend each sale after the ONRC Action injunction was based solely on that injunction and the district court's finding that the Forest Service's controversial interpretation of the Northwest Forest Plan was arbitrary, capricious and contrary

to law. 59 F. Supp.2d at 1091-95, 1096-97. In no way was the decision to impose the suspension "tailored to each sale and its surrounding circumstances." Def.Opp. at 2.

Defendant argues that certain factual differences in the circumstances of Swanson and in one or more of the consolidated cases before Judge Williams demonstrate that the transfer and consolidation of Swanson would be inappropriate. However, defendant has made no showing that any of these alleged factual differences have any significant bearing on any question of liability or damages in Swanson or the three cases consolidated before Judge Williams, much less that these factual differences preclude achieving the goals of judicial economy and consistency of adjudication if Swanson is transferred to Judge Williams.

For example, defendant claims vaguely that Swanson's Prairie Thin timber sale "was affected by subsequent litigation that had no effect on any of the sales at issue in Blue Lake, Timber Products or CLR." Def.Opp. at 4. However, defendant does not further identify this "subsequent litigation," explain its relevance to the common issue of liability involving all four cases or in any other way demonstrate that this alleged fact would be a significant factor in terms of achieving judicial economy or avoiding inconsistent adjudication of the material facts.

Defendant also references "natural wildfire occurrences" and later more specifically refers to the Biscuit Fire, which it asserts burned 90% of CLR's Too Wild sale and led to a catastrophic modification. Def.Opp. at 3. Once again, however, defendant does not demonstrate how these events relate to plaintiffs' key allegation of Forest Service liability under any of the four sales or to the appropriateness of transfer and consolidation. Further, in making this

assertion, defendant seems to be arguing that CLR is inappropriately consolidated with Blue Lake and Timber Products. To the best of plaintiff's knowledge, Swanson's Prairie Thin timber sale was not affected by the Biscuit Fire nor was Blue Lake's or Timber Products' sales. Notably, there is no reference in the complaint or the answer in CLR to the Biscuit Fire. Whatever relevance that fire may have, it is not relevant to the key issue of liability alleged by plaintiffs or the appropriateness of transferring Swanson to Judge Williams.

Defendant also suggests that Swanson is inappropriate for transfer and consolidation because the sale has now been completed whereas Blue Lake's, Timber Products' and CLR's sales are not yet complete. Once again, defendant has asserted that a factual difference makes Swanson inappropriate for transfer and consolidation, but fails to demonstrate how that fact will have any bearing on the issue of liability or the appropriateness of transfer and consolidation.

Defendant states that plaintiffs need not be concerned that numerous discovery issues which have been resolved by Judge Williams will need to be relitigated if this case is not transferred because "if Judge Williams rules that certain discovery is relevant to the issue [sic] or that the Government waived a privilege, then those rulings would apply in this case as well." Def.Opp. at 6. Notwithstanding defendant's assertions, one judge of this Court is not bound by the decision of another judge of this Court in a separate case. Perhaps more importantly, after attempting for more than a year to resolve significant outstanding discovery disputes informally with defendant through letters and telephone conversations, plaintiffs in the consolidated cases before Judge Williams filed a motion to compel discovery responses and for sanctions on January 9, 2004. Subsequent to that filing and following a series of status conferences, Judge

Williams granted significant portions of plaintiffs' motion to compel in a telephonic hearing on December 3, 2004, and has reaffirmed those rulings and ordered defendant to file revised privilege logs and/or provide documents to plaintiffs in subsequent telephonic status conferences (e.g., status conference on April 26, 2005). These discovery rulings have been critical to plaintiffs' case and involve key issues of relevance and privilege which defendant may try to avoid if Swanson is not transferred to Judge Williams.

Moreover, Judge Williams has indicated that in the near future, she will issue a written opinion explaining the rationale for her rulings granting portions of plaintiffs' motion to compel and will rule on the remaining pending discovery questions. These discovery rulings have moved the consolidated cases before Judge Williams forward after substantial delays due to defendant's failure and refusal to respond to plaintiffs' discovery. They also serve as an indication as to how Judge Williams may rule on any future discovery disputes as these consolidated cases proceed. We further note that before defendant received repeatedly adverse rulings on these discovery matters, defendant had no objection to the transfer and consolidation of three related timber sale suspension cases before Judge Williams. Defendant's current reversal of position and objection to transfer and consolidation of Swanson with Blue Lake, Timber Products and CLR may simply be an effort by defendant to evade these rulings in Swanson.

Defendant claims that "[t]o thrust this [Swanson] case, which was filed barely five months ago, into fast track litigation with cases that have been in litigation for four years would severely prejudice the Government." Def.Opp. at 6. First, plaintiff notes that although the

complaint in the instant case was filed five months ago, defendant has asked for repeated enlargements of time and still has not answered. Secondly, although plaintiff certainly appreciates and applauds defendant's statement that the consolidated cases before Judge Williams are "fast track litigation," this is only true because of Judge Williams' recent efficient and effective resolution of longstanding discovery disputes which have been responsible for more than two years of delay. Thirdly, contrary to defendant's suggestion that the "divergent procedural posture" of the cases before Judge Williams and Swanson is "the strongest factor weighing against consolidation," see Def.Opp. at 6, there is no divergent procedural posture. Discovery is proceeding before Judge Williams on a reasonable timetable that can easily accommodate the consolidation of an additional case, and neither party in any of the cases before Judge Williams has filed a dispositive motion nor indicated yet that one is appropriate prior to the completion of discovery.

This situation is entirely different from Entergy Nuclear Indian Point 2, LLC v. United States, 62 Fed. Cl. 798 (2004), in which the Court granted a motion to transfer but denied a motion to consolidate two cases. The Court denied the motion to consolidate because cross-motions for summary judgment had been filed in the first filed action and were "nearing the point at which briefing will be complete," id. at 803, whereas in the second case, only a complaint had been filed. Id. at 800. In that context there was a concern that the plaintiff in the last filed case would be put at a disadvantage because a key issue of liability could be decided before it had an opportunity to be heard. Id. at 803. In the already consolidated cases, Judge Williams has recently broken the discovery log jam caused by defendant, there is no trial or dispositive motion looming, and the government is the defendant in all four cases. In these

circumstances, there is no risk of prejudice to defendant in this case as there was to one of the plaintiffs in Entergy Nuclear.[7]

**CONCLUSION**

For each of the foregoing reasons, Swanson respectfully requests that the Court grant its motion to transfer, and if the motion is granted that the instant case be consolidated with case number 01-570C before Judge Williams.

Respectfully submitted,

s/Gary G. Stevens
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:
Alan I. Saltman
Ruth G. Tiger
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: June 3, 2005

[7] Defendant also cites A-1 Cigarette Vending, Inc. v. United States, 40 Fed. Cl. 643 (1998), in support of its argument that the factual differences in Swanson compared with the three cases before Judge Williams may require separate factual inquiries, thereby making consolidation inappropriate. Def.Opp. at 4. A-1 Cigarette is inapposite because it dealt with an issue of permissive joinder under RCFC 20(a) not consolidation under RCFC 40.1(a) and 42.1. More importantly, A-1 Cigarette involved an attempt to amend the complaint and ultimately join as many as 600 individual plaintiffs asserting Fifth Amendment taking claims in an amount of approximately $ one billion. 40 Fed. Cl. at 644. The principal issue in that case was the question of effective case management. Id. at 646. Swanson would bring the number of cases consolidated before Judge Williams to four, a reasonably manageable number.